**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GVAINESVILLE DIVISION**

**WENDI G. TAYLOR,**

    **Plaintiff,**

**vs.**                                **Case No.  1:14cv126-MP/CAS**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security,**

    **Defendant.**

    _____/

## REPORT AND RECOMMENDATION

    This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application pursuant to Title II of the Social Security Act for a period of disability and Disability Insurance Benefits (DIB). After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

**I. Procedural History**

    On February 1, 2011, Plaintiff, Wendi G. Taylor, filed an application for a period of disability and DIB, alleging disability beginning on August 19, 2003, based on depression, neck, back, hip, knees, and shoulder pain; could not sleep; and left hand

pain. R. 12, 118-19, 146, 150, 167-69. (Citations to the record shall be by the symbol "R." followed by a page number that appears in the lower right corner.) At hearing, Plaintiff amended her onset date to January 11, 2008. R. 12, 31-32. Plaintiff's date last insured, or the date by which her disability must have commenced in order to receive benefits under Title II, was December 31, 2010. R. 12, 146.

Plaintiff's application was denied initially on March 17, 2011, and upon reconsideration on May 18, 2011. R. 12, 53-56, 69. On April 1, 2012, Plaintiff requested a hearing. R. 12, 67-68. (It appears the request for hearing was initially filed on June 10, 2011. R. 79.) On April 29, 2013, Plaintiff appeared and testified at a hearing conducted in Jacksonville, Florida, by Administrative Law Judge (ALJ) K. Barlow. R. 12, 32-47. Charles K. Heartsill, an impartial vocational expert, testified. R. 12, 47-51, 104-07 (Resume). Plaintiff was represented by Pamela C. Dunmore, an attorney. R. 12, 29, 64-68, 115-17.

On June 11, 2013, the ALJ issued a decision and denied Plaintiff's application for benefits concluding that Plaintiff was not disabled from January 11, 2008, the amended alleged onset date, through December 31, 2010, the date last insured. R. 12-23. On June 19, 2013, Plaintiff requested review of this decision, R. 6-8, which the Appeals Council denied on June 10, 2014. R. 1-3. The ALJ's decision stands as the final decision of the Commissioner. See 20 C.F.R. § 404.981.

On July 11, 2014, Plaintiff filed a Complaint with the United States District Court seeking review of the ALJ's decision. Doc. 1. The parties filed memoranda of law, docs. 10 and 11, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant last met the insured status requirements of the Social Security Act on December 31, 2010." R. 14.

2. "The claimant did not engage in substantial gainful activity during the period from her [amended] alleged onset date of January 11, 2008, through her date last date insured of December 31, 2010." *Id.*

3. "Through the date last insured, the claimant had the following severe impairments: disorders of the spine, hypertension, and depression." *Id.*

4. "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 14. The ALJ found that Plaintiff's "mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing 12.04 [affective disorders]." R. 15. In making this finding, the ALJ considered the four broad functional areas, i.e., the "paragraph B" criteria in listing 12.04, and ultimately determined that Plaintiff had *moderate* restriction in activities of daily living; *moderate* difficulties in social functioning and concentration, persistence or pace; and *no* episodes of decompensation which have been of extended duration. R. 15.

5. "[T]hrough the date last insured, the claimant had the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) with no overhead reaching. The claimant was limited to simple, routine tasks with only occasional exposure to the public in an environment with only occasional changes." R. 16.

6. "Through the date last insured, the claimant was unable to perform any past relevant work" as a bookkeeper. R. 21.

7. "Through the date last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed," including work as a Route Clerk, Collator Operator, and Marker II. Each of these jobs has a light exertional level with a Specific Vocational Preparation (SVP) of 2.[1]  R. 22

---

[1] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month." Dictionary of Occupational Titles (DOT) (4th Ed., Rev. 1991), Appendix C: Components

8. "The claimant was not under a disability, as defined in the Social Security Act, at any time from January 11, 2008, the [amended] alleged onset date, through December 31, 2010, the date last insured."  R. 23.

### III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. Moore, 405 F.3d at 1211.[2]

---

of the Definition Trailer, § II, SVP.  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'"  Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status.  See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

    4.    Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

    5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). If the Commissioner carries this burden, the claimant must prove that he or she cannot

---

[3] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

Case No. 1:14cv126-MP/CAS

perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record resolving conflicts that might appear. 20 C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir.

1992), and must be clearly articulated.  Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.  The ALJ may discount a treating physician's opinion report regarding an inability to work if it is unsupported by objective medical evidence and is wholly conclusory.  Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).  Stated somewhat differently, the ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583 (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

## IV. Legal Analysis

**Substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform light work with restrictions and further supports the ALJ's consideration of Plaintiff's treating physician**, **Michael Horseman, M.D.'s opinions.**

Plaintiff argues the ALJ erred by failing to give great weight to an opinion of Plaintiff's treating physician, Dr. Horseman, relating to Plaintiff's ability to work. Doc. 10 at 10-14. Dr. Horseman treated Plaintiff from approximately 1998 to 2013 for a variety of ailments. R. 17-20, 234-64, 299-311, 313-14, 355-78, 421-32, 433-34. Although not a psychiatrist or mental health expert, Dr. Horseman also evaluated and treated Plaintiff for mental health-related issues including depression during this same timeframe. *Id.* Dr. Horseman's specialty is family medicine. R. 45-46, 383.

> The ALJ summarized Plaintiff's mental health-related issues.
>
> Primary care records show the claimant's depression has been poorly controlled since at least 2003. (Exhibit 2-F). The claimant reported symptoms including anhedonia, fatigue, and difficulties with motivation. She was treated with multiple medications including Paroxetine, Citalopram, Wellbutrin, and Sertraline. (Exhibit 10-F). On March 28, 2008, the claimant presented to William Benet, Psy.D., for a consultative psychological evaluation. [R. 319-22] The claimant described persistent depressed mood, crying spells, difficulties concentrating, fatigue, and apathy. She stated that she drinks five shots of vodka per week and when she drinks with friends, she has 5-7 drinks. The claimant also reported numerous blackouts. During the day, the claimant enjoys reading mysteries. If she feels well, she may clean the house. Dr. Benet observed the claimant was friendly and cooperative, but she looked sad and depressed. The claimant's attention and concentration were adequate and her short-term memory was above average for her age. Dr. Benet diagnosed dysthymic disorder, alcohol abuse, and history of adult antisocial behavior. Despite this, her cognitive functioning remains intact with no impairment in reasoning or memory functioning. Dr. Benet opined the claimant is capable of performing work-related mental tasks as well as social interaction. However, she has moderate restrictions on her ability to perform tasks involving sustained concentration and persistence due to depression and alcohol abuse. (Exhibit 8-F).
>
> Dr. Horseman's progress notes through November of 2008 document moderate depression with poor motivation. On November 21, 2008, the claimant was

prescribed Pristiq. At follow-up on February 20, 2009, she reported an initial increase in energy and motivation with Pristiq. By August 21, 2009, Dr. Horseman indicated the claimant's depression was relatively stable with 50 mg of Pristiq. The claimant's symptoms remained relatively unchanged until July 6, 2010, at which time the claimant reported feeling very lethargic and unmotivated. However, she continued to report a benefit in terms of mood and irritability. Dr. Horseman added Abilify to her medications. However, records from November 9, 2010 state the claimant never took the Abilify. Dr. Horseman recommended she increase her Pristiq to 100 mg. At follow-up in February of 2011, the claimant reported an increase in depression due to personal and financial stressors. Her prescription for Pristiq was increased to 100 mg. (Exhibit 10-F).

In March of 2011, Dr. Horseman completed a medical source statement. [R. 381-83] He noted the claimant's mood and affect were depressed and tearful. Although the claimant was able to complete brief tests of concentration, a test of reading demonstrated poor retention of two pages. Dr. Horseman opined the claimant's social interaction in activities of daily living are impaired by her depression. He stated the claimant's poor motivation, fatigue, and depressed mood are chronic and persistent with current therapy. The undersigned notes that although given the opportunity to do so, Dr. Horseman did not indicate the claimant is unable to work. (Exhibit 12-F).

At follow-up on September 16, 2011 and January 20, 2012, the claimant reported she never increased her dose of Pristiq, though she had been given a manufacturer supply. The claimant did report increased stress related to pending disability applications for she and her husband. Despite not increasing her dose of Pristiq, the claimant's depression remained stable on April 20, 2012. (Exhibit 20-F). Dr. Horseman documented few complaints regarding the claimant's mental health symptoms after that time. Most recently, on February 5, 2013, Dr. Horseman noted the claimant was stable in terms of depression. (Exhibit 21-F).

R. 20.[4]

As noted above, on March 4, 2011, more than two months after Plaintiff's date last insured of December 31, 2010, Dr. Horseman completed a Treating Source Mental Status Report. R. 381-83. Dr. Houseman was asked several questions including: "6. Is

---

[4] Plaintiff does not take issue with the ALJ's findings. Doc. 10. Thus, the ALJ's relevant findings are recited herein in lieu of providing a chronological statement of the Plaintiff's medical history.

this individual capable of sustaining work activity for eight hours a day, five days a week? If not, explain why using examples of behavioral objective data." R. 383. Dr. Horseman responded: "Poor motivation, fatigue and depressed mood are chronic and persistent on current therapy." *Id.* The ALJ restated this response and stated: "The undersigned notes that although given the opportunity to do so, Dr. Horseman did not indicate the claimant is unable to work. (Exhibit 12-F)." R. 20. Plaintiff focuses her attention on this question and answer, which she argues demonstrates that Dr. Houseman determined she could not work. Doc. 10 at 10, 14. Contrary to Plaintiff's argument, Dr. Horseman did not indicate Plaintiff was unable to work.

As noted by the ALJ, on March 13, 2011, Linda O'Neil, Ph. D., a non-examining Disability Determination Services consultant, completed a Psychiatric Review Technique. R. 21, 392-405. (Dr. O'Neil also completed a Mental RFC Assessment. R. 406-08). Dr. O'Neil reviewed evidence including Dr. Horseman's March 2011 responses in the Treating Source Mental Status Report. R. 404; *see* R. 235, 260, 286-88, 307, 313, 319-22, 361, 363, 369, 381-83. Dr. O'Neil noted in part:

> MD sent in form 3/2011 saying depression impacts ADLS and social, poor motivation, issues persistent; thought process wnl, fully oriented, remote memory wnl; chronic depression, normal dress and hygiene, tearful affect. Capable. This MSS is considered but not given full weight as it is several mos after DLI and this assessment is for only DLI. Also, MD treats claimant but is not a specialist. *Most significatnly [sic], however, is this actually gives no specific indication that cl would be unable to function well enough for a basic job.* Reviewing overall inforamtion [sic], especially prior to DLI, information does suggest ongoing issues with depression but depression was generally moderate and variable and there was little in the longitudinal notes to suggest sustaind [sic] psych issues of a severity to preclude basic work functions.
>
> In sum, cl has a long history of depression which is variable but generally moderate in degree. Prior GAF 60. Also has at least a history of intermittent issues with Alc abuse and possible PD. There is little, especially prior to DLI, which suggests any ongoing psych issues of a severity to substantially impact

>vocational potential.  Some moderate (but not marked) limitations reasonable: MRFC in file.  Physical issues need to be addressed elsewhre [sic.]

R. 404 (emphasis added).[5]  The ALJ considered Dr. O'Neil's opinion that was affirmed by Dr. Bauer.  R. 21.  The ALJ then determined that

>[t]he opinions of Drs. Benet, O'Neil, and Bauer are consistent with the medical evidence including Dr. Horseman's statement that the claimant's depression affects her social functioning and activities of daily living.  Dr. Horseman's progress notes show treatment for depression, but few abnormalities on mental status examination.  In addition, these opinions are consistent with the claimant's credible testimony that she retains the ability [to] concentrate and persist to read books, but at times has little motivation for other tasks.  Accordingly, the undersigned gives great weight to the opinions of Dr. Benet, Dr. O'Neil, and Dr. Bauer that the claimant has some limitations with concentration for extended periods of time.  To accommodate these limitations, the undersigned has reduced the residual functional capacity to simple, routine tasks in an environment with only occasional changes.  The undersigned finds the claimant's testimony regarding some difficulties with social functioning is also credible. The residual functional capacity has been further reduced to provide for occasional exposure to the public.
>
>Although the claimant's thought processes remains [sic] largely intact as evidenced by her frequent reading, her depression impacts her activities of daily living, motivation, and social functioning.  Despite this, since 2008 the claimant has received conservative treatment for her depression.  She has not undergone any intensive outpatient counseling.  In addition, there is no evidence of mental health exacerbations requiring emergent or inpatient treatment.  Dr. Horseman has consistently indicated that her depression is stable.

R. 21.

The ALJ's reading of Dr. Horseman's opinion is consistent with and supported by Dr. O'Neil's assessment of Dr. Horseman's opinion, R. 404, as affirmed by Dr. Bauer, R. 411.  Plaintiff did not show that Drs. O'Neil and Bauer, and the ALJ, were incorrect in their assessments of Dr. Horseman's opinion.  Dr. Horseman's March 2011 opinion does not indicate Plaintiff had limitations on her ability to work beyond the limitations the ALJ included in Plaintiff's RFC during the relevant period.  R. 16, 381-83.  Similarly,

---

[5] On May 16, 2011, Keith Bauer, Ph.D., stated: "I have reviewed all the evidence in file and the PRTF and MRFC of 3/13/11 are affirmed."  R. 411.

Dr. Horseman's treatment notes from the relevant period, as discussed by the ALJ, do not indicate Plaintiff's mental condition imposed additional limitations on her ability to work on or before the date last insured of December 31, 2010. *See, e.g.*, R. 16-21, 313-14, 355, 361-64, 368-71, 375-78.[6]

Dr. Horseman diagnosed Plaintiff with depression, but a diagnosis does not establish work-related limitations. *See generally* Moore, 405 F.3d at 1213 n.6. As the ALJ noted, Dr. Horseman noted few, if any, mental status abnormalities and his minimal findings regarding Plaintiff's mental condition do not indicate she had noteworthy mental limitations. R. 20-21; *see, e.g.*, R. 313-14, 355, 361-64, 368-71, 375-78.

Furthermore, Dr. O'Neil's assessment of Dr. Horseman's opinion and her opinion regarding Plaintiff's mental limitations prior to the expiration of her insured status, as affirmed by Dr. Bauer, are supported by the medical findings and consistent with the overall record as discussed by the ALJ. R. 15-21; *see* 20 C.F.R. § 404.1527(c)(3); Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 807 (11th Cir. 2013) (unpublished). Drs. O'Neil, R. 404, and Bauer, R. 411, reviewed evidence before Plaintiff's date last insured including Dr. Horseman's notes and others from the relevant period (August 19, 2003, initial alleged onset date, R. 12), and shortly thereafter (March 2011), as did the ALJ. *See, e.g.,* R. 15-21, 235, 260, 286-88, 307, 313, 319-22, 361, 363, 369, 381-83. Substantial evidence supports the ALJ's decision to give great weight to the opinions of Drs. O'Neil and Bauer. R. 21; *see* 20 C.F.R. § 404.1527(c)(3), (c)(4), (e)(2); Social Security Ruling 96-6p, 1996 SSR LEXIS 3, at 4-7 (eff. July 2, 1996).

---

[6] As noted by the ALJ, R. 20, on February 5, 2013, Dr. Horseman noted that Plaintiff "is stable in terms of depression but may run out of Pristiq prior to receiving a new supply." R. 433; *see* R. 422 (Apr. 20, 2012).

Substantial evidence also supports the ALJ's decision to give great weight to the opinion of Dr. Benet who performed a consultative psychological evaluation of Plaintiff in March 2008, conducted after Plaintiff's amended alleged onset date of January 11, 2008. R. 12, 20-21, 319-22; *see* R. 17-18, 316, 325-28 (Dr. Adhami's Mar. 22, 2008, medical consultation evaluation (CE)).[7] Dr. Benet is a mental health specialist and his unremarkable objective clinical findings support his opinion. *Id.*; *see* 20 C.F.R. § 404.1527(c)(3), (c)(5). Dr. Benet's opinion is also consistent with the record as a whole, as discussed by the ALJ. R. 15-21; *see* 20 C.F.R. § 404.1527(c)(4).

Plaintiff did not meet her burden of proving she was disabled prior to the expiration of her insured status. *See* Moore, 405 F.3d at 1211. The ALJ properly considered the relevant evidence and properly performed her duty as the trier of fact to weigh and resolve any conflicts in the evidence. *See* Phillips, 357 F.3d at 1240 n.8. Substantial evidence supports the ALJ's assessment of Plaintiff's RFC and Plaintiff did not prove she had additional disabling limitations on or before her date last insured. Plaintiff also did not meet her burden of proving that she could not perform the jobs

---

[7] On May 18, 2011, Robert Steele, M.D., a non-examining medical consultant, completed a Physical RFC Assessment and concluded Plaintiff is capable of occasionally lifting/carrying twenty pounds; frequently lifting/carrying ten pounds; standing or walking six hours of an eight-hour workday; and sitting six hours of an eight-hour workday. R. 414. (Dr. Steele referred to Dr. Adhami's CE. *Id.*; *see* R. 17-18). The ALJ considered Dr. Steele's opinion and found it was "consistent with the overall evidence, including the claimant's testimony regarding her ability to lift 15 pounds which is presumably more at her date of application due to her assertion that her symptoms have increased." R. 19. The ALJ noted that Plaintiff had a history of cervical spine surgery with residual pain and some decreased range of motion and that the RFC had been reduced to light exertional work to accommodate her limitations. The ALJ also found Plaintiff's testimony regarding having some difficulties reaching overhead be credible and reduce the RFC further to provide for avoidance of overhead reaching. *Id.* The ALJ noted that Plaintiff has limitations which reduces her RFC, but that "the medical evidence simply fails to support a conclusion that the claimant is precluded from performing all work activity." *Id.* The ALJ made other credibility findings which led the ALJ to conclude that despite some of her limitations Plaintiff is not unable to work. *Id.*

identified by the vocational expert through her date last insured.  R. 22, 48-49; Jones, 190 F. 3d at 1228-29.

Substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled during the relevant period from her amended alleged onset date of January 11, 2008, through her date last insured of December 31, 2010.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.  Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for DIB be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 11, 2014.

> **s/ Charles A. Stampelos**
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**